IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| EL CAMPO VENTURES, LLC, § | |
| Plaintiff, § | |
| v. § | |
| § | No. 1:20-CV-00560-RP |
| STRATTON SECURITIES INC., § | |
| STRATTON OILFIELD SYSTEMS § | |
| TEXAS LLC, DANIEL STRATTON, § | |
| SHANNON STRATTON, § | |
| Defendants. § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO THE HONORABLE ROBERT PITMAN
UNITED STATES DISTRICT JUDGE:

Before the court is Plaintiff's Motion for Attorneys' Fees, Prejudgment Interest, Post-Judgment Interest and Costs ("the Motion") (Dkt. #113), Defendants' Opposition to Plaintiff's Motion for Attorneys' Fees, Prejudgment Interest, Post-Judgment Interest and Costs (Dkt. #116) and Plaintiff's Reply in Support of Its Motion for Attorneys' Fees, Prejudgment Interest, Post-Judgment Interest and Costs (Dkt. #117).[1] A hearing was held on December 3, 2021 and a follow-up hearing was held on January 4, 2022. In the wake of the January hearing, Plaintiff was ordered to submit additional information in support of their attorneys' fee claim. The Court is now in receipt of Plaintiff's Supplemental Memorandum in Support of Its Motion for Attorney Fees, Prejudgment Interest, Post-Judgment Interest and Costs (Dkt. #128) and Defendant's Response to Plaintiff's Supplemental Memorandum in Support of Its Motion for Attorneys' Fees, Prejudgment

---

[1] On October 14, 2021, the Motion was referred by United States District Judge Robert Pitman, via text order, to the undersigned for resolution pursuant to 28 U.S.C. § 636(b)(1)(B), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

1

Interest, Post-Judgment Interest and Costs (Dkt. #129). After reviewing the pleadings, the arguments of counsel, the relevant case law, as well as the entire case file, the undersigned recommends the District Court **GRANT, in part, and DENY, in part** the Motion.

## I. BACKGROUND

On September 9, 2021, a jury returned a verdict in favor of El Campo Ventures, LLC ("El Campo" or "Plaintiff"). The jury found that Defendant Stratton Securities, Inc. failed to comply with the agreement in dispute and awarded damages in the amount of $4,095,300.00. Dkt. #109. To be clear, the jury's verdict implicated only Defendant Stratton Securities, Inc ("Defendant"). Original defendants Stratton Oilfield Systems Texas LLC, Daniel Stratton and Shannon Stratton were not implicated by the jury's verdict in favor of El Campo.

Plaintiff seeks to recover attorneys' fees, prejudgment and post-judgment interest and costs. Dkt. #113. The parties agree that Texas law applies to this case. In addition, it appears that the parties agree on the post-judgment interest rate and the amount of costs. A sharp dispute remains concerning the amount of recoverable attorneys' fees and prejudgment interest.

Plaintiff's attorneys' fee request is premised on section 38.001(8) of the Texas Civil Practices and Remedies Code, which provides for the recovery of attorneys' fees and costs, if the claim is for an "oral or written contract." Plaintiff contends that to recover attorneys' fees under this chapter it only need prove that Plaintiff (1) was represented by an attorney, (2) presented its claim to the opposing party or agent, and (3) payment for the just amount owed was not tendered before the expiration of the 30th day after the claim was presented. §38.002(2). Under this provision and consistent with the jury's verdict in its favor, Plaintiff is entitled to recover attorneys' fees and costs.

Plaintiff engaged attorneys, Alfonso C. Nevarez ("Nevarez") and Benjamin P. Gates ("Gates"), to represent Plaintiff in this matter. Nevarez and Gates were retained on the basis of an

agreement by which they "agreed to be compensated solely in the form of a contingent fee. The contingent fee percentage was 25% on amounts recovered prior to the commencement of a trial, and 30% after the commencement of a trial." *See* Dkt. #113-1 and 113-2. Consequently, Plaintiff initially seeks to recover 30% of the awarded damages for an attorneys' fee recovery of $1,228,590. Plaintiff maintains that a 30% contingency fee arrangement is a usual and customary fee agreement in this type of case. Recognizing the potential for segregation of fees because Plaintiff did not prevail on all claims against all parties, Plaintiff offers a 5% reduction of the requested attorneys' fees reducing the percentage of recovery to 27%. This concession reduces Plaintiff's attorneys' fee request to $1,105,731

Defendant takes issue with Plaintiff's contention that all Plaintiff must show is that a 30% contingency fee agreement was reached between Plaintiff and its counsel. Defendant contends that the Texas Supreme Court held that the lodestar analysis applies to any situation in which an objective calculation of reasonable hours worked times a reasonable rate can be employed. Dkt. #116 at 2, *citing*, *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 497-498 (Tex. 2019) ("*Rohrmoos Venture*"). Defendant contends the "Texas Supreme Court expressly held in *Rohrmoos* that a contingency fee agreement may not be used to shift attorney's fees to the defendant. 'Only fees reasonable and necessary for the legal representation will be shifted to the non-prevailing party, and not necessarily the amount contracted for between the prevailing party and its attorney, as a client's agreement to a certain fee arrangement or obligation to pay a particular amount does not necessarily establish that fee as reasonable and necessary.'" *Id*. at 3, *citing Rohrmoos Venture* at 488. Defendant notes that all but one distinguishable case cited by Plaintiff, pre-date *Rohrmoos Venture*. Defendant objects to Plaintiff's failure to provide any evidence of an objective figure that "approximates the fee Plaintiff's attorneys would have received had they properly billed a paying client by the hour in a similar case." *Id.* at 5.

Defendant also argues that Plaintiff has failed to properly segregate, or reduce, the requested attorneys' fee amount. Specifically, Defendant notes that the final jury verdict implicated only one defendant, Stratton Securities, Inc. Six of the seven original defendants were absolved of any responsibility. After contested litigation, three defendants were dismissed prior to trial. At trial, three additional defendants (Daniel Stratton, Shannon Stratton and Stratton Oilfield Systems Texas, LLC) were essentially dismissed as well. At trial, the jury was only asked to determine the liability of one defendant, Stratton Securities, Inc. The jury found for Plaintiff on the question of whether the defendant failed to comply with the Proceeds Sharing Agreement. Dkt. #109. Plaintiff's conversion and fraud claims, and request for exemplary damages, against Stratton Securities, Inc. ("the Defendant") were rejected by the jury. *Id.*

In its reply brief, Plaintiff maintains that *Rohrmoos Venture* specifically authorized the recovery of attorneys' fees pursuant to a contingency fee agreement. Dkt. #117 at 1-2. Plaintiff also suggest that *Rohrmoos Venture* provides that a prevailing Plaintiff may elect whether to recover under either the loadstar method or contingent fee arrangement. *Id*. at 2.

At the January 4, 2020, hearing, this Court advised Plaintiff of its belief that Plaintiff misread *Rohrmoos Venture*. While Plaintiff is correct in asserting that *Rohrmoos Venture* did not prevent the recovery of attorneys' fees generated pursuant to a contingency fee agreement, the Texas Supreme Court clearly requires the prevailing party to establish that the attorneys' fees requested are reasonable and necessary. In other words, Plaintiff was required to do more than simply reference a contingency fee agreement. Instead, Plaintiff must attempt to approximate the lodestar method and submit evidence to support its belief that the attorneys' fees sought were reasonable and necessary in this case. Plaintiff was authorized to supplement its original fee request.

Plaintiff's Supplemental Memorandum stubbornly clings to the belief that all Plaintiff must show is the existence of a 30% contingency fee agreement between a plaintiff and retained counsel to support an award of attorneys' fees. Dkt. #128. Plaintiff apparently believes that because 30% contingency fee agreements are common, such compensation agreements always reflect a reasonable and necessary rate. Plaintiff appears to suggest that a court should then enter an order that rubber stamps contingency fee agreements as the appropriate amount of attorneys' fees for the prevailing party after trial. That simply is not the law. Furthermore, Plaintiff has failed to cite a single persuasive post-*Rohrmoos Venture* case for this proposition.[2]

Defendant points out numerous deficiencies in its response to Plaintiff's supplement. Dkt. #129. Defendant's criticism starts with Plaintiff's continued insistence that the lodestar method does not apply to contingency fee agreements. *Id.* at 1-3. Defendant also objects to Plaintiff's $750 hourly rate as excessive. *Id.* at 3-6. Similarly, Defendant contends that Plaintiff's billable hours are not reasonable, and Plaintiff failed to offer sufficient evidence that it segregated non-recoverable attorneys' fees from its request. *Id.* at 6-13.

## II. ANALYSIS

### A. ATTORNEYS' FEES

To secure an award of attorneys' fees from an opponent, the prevailing party must prove that: (1) recovery of attorneys' fees is legally authorized, and (2) the requested attorneys' fees are reasonable and necessary for the legal representation, so that such an award will compensate the prevailing party generally for its losses resulting from the litigation process. *Rohrmoos Venture, supra* at 487. Given the jury's verdict, the recovery of attorneys' fees is not contested by Defendant and is legally authorized. What remains to be decided is whether Plaintiff's requested attorneys'

---

[2] The only case cited by Plaintiff was *CAN Capital Asset Servicing, Inc. v. Walker*, 1:17-CV-1147-RP (W.D. Tex. May 30, 2019). This case was decided 39 days after the *Rohrmoos Venture* decision, makes no reference to that decision and is otherwise distinguishable.

fees are reasonable and necessary, so that the requested amount generally compensates Plaintiff for its losses resulting from the litigation process.

A determination of reasonable and necessary attorneys' fees is premised on the application of the lodestar method. *Id*. at 489. Courts in the Fifth Circuit also apply the lodestar method to calculate attorneys' fees. *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013) (citing *Heidtman v. Cty. of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999)).  The lodestar amount is calculated by multiplying the number of hours an attorney reasonably spent on the case by an appropriate hourly rate.  *Black*, 732 F.3d at 502 (citing *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012)).  The appropriate hourly rate is defined by the market rate in the community in which the district court sits and should reflect the prevailing market rates, not the rates that "lions at the bar may command."  *Black*, 732 F.3d at 502 (citing *Smith & Fuller*, 685 F.3d at 490); *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002); *Hopwood v. Texas*, 236 F.3d 256, 281 (5th Cir. 2000).  Litigants seeking attorneys' fees have the burden to show the reasonableness of the hours billed and that the attorneys exercised reasonable billing judgment.  *Black*, 732 F.3d at 502 (citing *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006)); *Riley v. City of Jackson*, 99 F.3d 757, 760 (5th Cir. 1996). The lodestar amount is entitled to a strong presumption of reasonableness.  *Black*, 732 F.3d at 502 (citing *Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010)).

After calculating the lodestar amount, the district court may adjust the amount of attorneys' fees based on the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).  *Id*. [3] Many of these factors are subsumed within the initial

---

[3] These factors are: (1) the time and labor required; (2) the novelty and difficulty of issues in the case; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to accepting the case; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11)

calculation of hours reasonably expended at a reasonable hourly rate and should not be double-counted. *See id.*; *Jason D.W. v. Hous. Indep. Sch. Dist.*, 158 F.3d 205, 209 (5th Cir. 1998) (internal citations omitted). In *Rohrmoos Venture*, the Texas Supreme Court established eight factors to determine whether a requested fee award is reasonable and necessary. The relevant factors are similar to those articulated in *Johnson*.[4]

With this said, the court proceeds to calculate an appropriate attorneys' fee award.

### 1. HOURLY RATE

Nevarez has been a licensed attorney for 22 years and states "[a] large portion of my practice has been devoted to litigation of complex business matters and catastrophic injury cases in state and federal court. I practice law in numerous counties and metropolitan areas in Texas, including in Travis County, Texas, and within the Western District of Texas, Austin Division … where this action is pending." Dkt. #128-3 at 2-3. Nevarez bills at an hourly rate of $500. However, Nevarez contends that this rate is not reasonable because it fails to account for the risk of loss, the delay in receiving payment for services or the recovery of advanced litigation costs. *Id.* at 3. Consequently, Nevarez believes the lodestar should be calculated at the higher hourly rate of $750 instead.

---

the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Black*, 732 F.3d at 502 n.7 (citing *Johnson*, 488 F.2d at 717-19).

[4] (1) the time and labor required, the novelty and difficulty of the questions, involved, and the skill required to perform the legal service properly;

(2) the likelihood ... that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered. *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469 (Tex. 2019) (citing *Arthur Andersen & Co. v. Perry Equirpment Corp.*, 945 S.W. 2d 812, 818 (Tex. 1997)).

Gates has been a licensed attorney for 14 years and his practice is devoted to litigation of complex business matters in state and federal court. Dkt. #128-4 at 1. Gates also bills at a standard hourly billing rate of $500. Gates also contends the $500 hourly rate is unreasonable in this case for the same reasons articulated by Nevarez. In fact, the affidavits submitted by Nevarez and Gates are essentially identical with the exception of the number of hours worked by each attorney.

Plaintiff also submitted an affidavit from Dan Gattis ("Gattis'), the Manager of El Campo Ventures, LLC. Dkt. #128-2. Gattis has also been a licensed attorney for 27 years. His affidavit describes the contingency fee arrangement between Plaintiff and attorneys Nevarez and Gates. Gattis also states that he is familiar with the average, customary and reasonable hourly rates charged by attorneys in complex commercial litigation in Austin and based on his knowledge and experience, "$750-$790 seems to be the range of hourly rates charged by partners at reputable Austin law firms for this type of representation." *Id.* at 3.

Nevarez and Gates ("counsel") have essentially submitted identical affidavits. Despite differences in experience and background both Nevarez and Gates state that they normally employ a $500 hourly rate. Both seek a significant 33% increase in their professed traditional hourly rate to $750 an hour. Counsel justifies this increase because the higher rate is appropriate given the contingent nature of their fee agreement with Plaintiff. *See* Dkt. 128-3 and Dkt. 128-4. As Defendant notes, counsel have presented little evidence as to their respective backgrounds, education, skill, experience or reputation. Counsel attempt to buttress their hourly rate request with the Gattis affidavit. As the manager of El Campo, Gattis can only speculate that an hourly rate between $750-$790 "seems" to be appropriate. Gattis does not state what El Campo traditionally pays for legal services. Simply stated, the Gattis affidavit is unpersuasive.

Plaintiff's collective briefing and affidavit submissions are a clear effort to reverse-engineer a justification for an attorneys' fee award that mimics the amount they would have

recovered under the contingency fee agreement. Between continued unpersuasive and erroneous legal arguments and obviously manipulative affidavits and attached billing records, it is difficult to put much stock in Plaintiff's analysis of this issue or evidence submitted. As a consequence, the Court finds Defendant's legal arguments more persuasive.

Defendant's evidence on hourly rates is centered on the affidavits of attorneys, William S. Rhea ("Rhea") and Michael Jones ("Jones"). The Court finds the Rhea and Jones affidavits to be significantly more persuasive than those of Nevarez and Gates. Based on his 34 years of legal experience, Rhea contends that a reasonable hourly rate for Nevarez is between $350-$475 and for Gates between $300-$375. Dkt. #129-1 at 3-4. Based on his 36 years of legal experience, his familiarity with this case as Defendant's counsel and based on references to State Bar of Texas hourly rate information, Jones contends an hourly rate of $400 for Nevarez and $300 for Gates is appropriate. Dkt. #129-2 at 3-4.

Based on all of the information before it, the Court finds that a reasonable hourly rate for **Nevarez is $400.00**. While the reasonably hourly rate for **Gates is $350.00.**

### 2. TIME EXPENDED

Next, the court must determine whether the hours worked by Nevarez and Gates in this case were reasonable. Both attorneys submitted billing records as attachments to their affidavits. *See* Dkt. #128-3 at 7-23 and #128-4 at 7-20. Nevarez and Gates seek reimbursement for a total of 379.3 and 747.9 hours respectively for a total of 1,127.2 hours of legal work. Defendant contends the submitted billing records evidence billing inflation, charges for duplicative and unnecessary work, unnecessary and inflated travel expenses and work related to briefing on matters that were resolved unfavorably to the Plaintiff in the run up to trial.

The issues presented at trial were not difficult. The trial itself represented a contract dispute and was not a difficult case to try. Between voir dire and verdict, the entire trial took only three

days. Moreover, counsel spent a number of hours unsuccessfully attempting to pursue meritless claims against the original seven named defendants. As Defendant notes, Plaintiff's supplemental memorandum makes no concession or proposed reduction to the lodestar to reflect the hours spent on meritless claims.

Plaintiff's advocacy is so obviously compromised on this issue that it is barely worthy of consideration. As a consequence, the Court is again forced to rely on Defendant's analysis of counsels' billing records. Defendant suspects Plaintiff's counsels' billing records were prepared in connection with the submission of Plaintiff's Supplemental Memorandum rather than kept contemporaneously with the work performed. While the Defendant's suspicion may in fact be true, for the purpose of further analysis the Court will take Plaintiff's counsel at their word as it relates to the number of hours spent on this case.

After having carefully reviewed the arguments of the parties and all evidentiary submissions, the Court finds that Nevarez's original 379.30 hours should be reduced to **308.80 hours**. Similarly, Gates original 747.90 hours should be reduced to **501.80 hours.** The reductions to Nevarez and Gates hours are made for the reasons cited in Defendant's Response to Plaintiff's Supplemental Memorandum and the summary exhibit to that response. *See* Dkt. #129 at 6-14, and Dkt. #129-2 at 76.[5]

Having made these reductions, the Court declines Defendant's invitation to further reduce the hours worked by an additional 15% to reflect "duplicative work, conferences and trial prep etc." *See* Dkt. #129-2 at 76. Similarly, the Court declines Defendant's request for a further 20% reduction in fees based on a failure to properly segregate for unsuccessful claims. The Court finds

---

[5] In summary, the reductions are justified based on inflated and unnecessary travel and legal work, as well as, time attributable to the pursuit of meritless claims against all seven originally named defendants.

that both considerations have been adequately addressed by way of the reduction in attorney hours. *See* Dkt. 129-2 at 76.

### 3. *JOHNSON* FACTORS

Counsel contend that application of the *Johnson* factors necessitates an enhancement to their fee request. Specifically, Plaintiff argues an enhancement is appropriate because Plaintiff could not have secured legal representation absent a contingency fee. Defendant argues that counsels' contention that Plaintiffs would not have been able to afford representation without a contingency fee is "not one of the *Johnson* factors which might support enhancement." Dkt. #129 at 13. Defendant is wrong. Whether a fee is fixed or contingent is a *Johnson* factor. This factor when combined with a second *Johnson* factor pertaining to the amount involved and results obtained warrant an enhancement in this case. Based on all of the information before it, the Court finds that a **25% enhancement** is appropriate in this case.

Other than the contingency argument above, neither side has argued persuasively for any further increase or decrease to the lodestar based upon an application of the *Johnson* factors.

### 4. ATTORNEYS' FEE AWARD

The Court initially determined that Plaintiff is entitled to an attorneys' fee award of $299,150.00. This figure is a function of Nevarez' 308.8 hours worked times an hourly rate of $400.00 for a total of $123,520.00; and Gates' 501.8 hours worked times an hourly rate of $350.00 for a total of $175,630.00. However, the total attorneys' fee award of $299,150.00 should be increased by 25% ($74,787) for a total of **373,937.00**.[6]

---

[6] The $373,937.00 reward is significantly less than what is called for in contingency fee agreement between Plaintiff and counsel, but as the Texas Supreme noted in *Rohrmoos Venture* "[w]e emphasize that, pursuant to an attorney–client fee agreement, a client could ultimately owe its attorney more fees than the amount of the award shifting fees to the non-prevailing party. However, fact finders should be concerned with awarding reasonable and necessary fees, not with any contractual obligations that may remain between the attorney and client." *Rohrmoos Venture* at 502, fn. 13.

11

B.  **PREJUDGMENT INTEREST**

Pursuant to Chapter 304, Subchapter A, Plaintiff is entitled to the recovery of prejudgment interest. The parties appear to agree that Plaintiff is entitled to prejudgment interest for 659 days at an interest rate of 5%. Plaintiff contends that this calculation should be applied to the total jury award of $4,095,300, for a total of $369,699.00.

Defendant contends this calculation should not be applied to the total jury award. Instead, Defendant argues the jury award "could only have been arrived as follows." Dkt. #116 at 8. Defendant goes on to calculate that the jury award must have included contract year 4 and contract year 5 recovery, years that would have taken place after the date judgment was entered. Unfortunately, the jury was not asked to discern between past and future damages. Instead, the question posed was: "What sum of money, if paid **now** in cash, would fairly and reasonably compensate Plaintiff El Campo Ventures, LLC for its damages that resulted from Defendant Stratton Securities, Inc.'s failure to comply with the Proceeds Sharing Agreement dated May 2, 2019?" Dkt. #109 at 1 (emphasis added).

Defendant may be right, but who knows? The jury was in the best position to distinguish between past and future damages. Unfortunately, the jury was not asked to do so. The Defendant did not object to the form of the question posed to the jury. It is impossible to establish with certainty how the jury arrived at the final damages figure of $4,095,300. As a consequence, the Court recommends that Defendant be ordered to pay prejudgment interest totaling $369,699.00 which is calculated by applying an interest rate of 5% for 659 days to the total jury award.

III.  **RECOMMENDATION**

For these reasons, the undersigned **RECOMMENDS** that Plaintiff's Motion for Attorneys' Fees, Prejudgment Interest, Post-Judgment Interest and Costs (Dkt. #113) be **GRANTED, in part, and DENIED, in part.**  Specifically, the undersigned further

**RECOMMENDS** that the court enter judgment in favor of the Plaintiff, El Campo Ventures, LLC, as follows:

    A. Attorneys' Fees in the in the amount of $358,980.00.

    B. Prejudgment Interest in the amount of $369,699.00.

    C. Post-Judgment Interest at the rate of 1.08%.

    D. Costs in the amount of $14,472.49.

**IV.**    **OBJECTIONS**

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc).

SIGNED January 28, 2022.

                                              MARK LANE
                                              UNITED STATES MAGISTRATE JUDGE