IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| EL CAMPO VENTURES, LLC, | § § § | |
| Plaintiff, | § § | |
| v. | § § | 1:20-CV-560-RP |
| STRATTON SECURITIES, INC., et al., | § § § | |
| Defendants. | § § | |

**ORDER**

Before the Court is Defendant Stratton Securities, Inc.'s ("Defendant") Motion for Remittitur, or in the Alternative, Motion for New Trial, (Dkt. 114), and related briefing, (Dkts. 118, 120). After considering the parties' arguments, the facts in the record, and the relevant law, the Court denies Defendant's motion.

## I.  BACKGROUND

This breach-of-contract case arises out of an agreement between the parties pertaining to the Studios in Carrizo Spring, Texas, a town southwest of San Antonio and about 30 miles from the border with Mexico. The Studios is a complex consisting of modular buildings that initially housed oilfield workers. (R. & R., Dkt. 66, at 1). Several years later, Defendant, which owns the Studios, was looking to sell the facilities. Plaintiff El Campo Ventures LLC ("Plaintiff") offered to facilitate the sale of the Studios with the goal of selling the facilities to the government to use as an immigration detention facility. (*Id.* at 3; P-1). The parties entered into a proceeds sharing contract pursuant to which the parties agreed to share proceeds from the sale of the Studios—with Defendant collecting the first $4 million and the parties evenly splitting any additional proceeds. (P-1). In the end, the government wanted to lease the Studios, rather than purchase it, and Defendant told Plaintiff that Plaintiff would be compensated as if it were a sale. (P-2). Defendant entered into a three-year lease

1

with the government in 2019 for the Studios to be used as a facility for unaccompanied minors. (D-19; R. & R., Dkt. 66, at 4). Under the lease agreement, Defendant was required to make repairs and improvements to the Studios, and the government could exercise an option to extend the lease term twice by one year for years four and five. (D-19).

In 2020, Plaintiff sued Defendant, Daniel Stratton, and Shannon Stratton in Dimmit County.[1] (Orig. Pet., Dkt. 1-2). Daniel and Shannon Stratton are South Carolina residents who own Defendant. (Am. Compl., Dkt. 37, at 3). Plaintiff alleged that it had held up its side of the bargain by making a deal with the government which leased the Studios. (*Id.* at 1–2). Yet, according to Plaintiff, Defendant breached their agreement by refusing to share transaction proceeds. (*Id.* at 11). The case was removed to federal court on April 15, 2020. (Dkt. 1).

The case was tried to a jury in September 2021. (Minute Entries, Dkts. 100, 101, 102). Jury selection and the parties' cases spanned three days. (*See id.*). On the final day of trial, the jury was charged, deliberated, and reached a verdict. (Dkts. 108, 109). The jury found that Defendant breached its contract with Plaintiff and awarded Plaintiff $4,095,300 in damages. (Verdict, Dkt. 109, at 1). In its motion, Defendant challenges the jury's damages award as erroneous.

## II. LEGAL STANDARDS

**A. Motion for Remittitur**

A party's alternative request for remittitur, rather than a new trial, may be granted where the damage award was "merely excessive or so large as to appear contrary to right reason." *Brunnemann v. Terra Intern, Inc.*, 975 F.2d 175, 178 (5th Cir. 1992). "A verdict is excessive as a matter of law if shown to exceed 'any rational appraisal or estimate of the damages that could be based upon the evidence before the jury.'" *Id.* at 178 (quoting *Kolb v. Goldring, Inc.*, 694 F.2d 869, 871 (1st Cir. 1982)). "A

---

[1] Plaintiff initially sued other defendants, as well, but later amended their complaint.

verdict will be considered excessive only if it is greater than the maximum amount the trier of fact could properly have awarded." *Hernandez v. M/V Raajan*, 841 F.2d 582, 587 (5th Cir. 1988). Faced with an excessive damages award, a "court may either order a new trial on damages or may give the plaintiff the option of avoiding a new trial by agreeing to a remittitur of the excessive portion of the award." *Id.* "Remittitur is the process by which a court compels a plaintiff to choose between reduction of an excessive verdict and a new trial." *Cornell University v. Hewlett-Packard Company*, 609 F. Supp. 2d 279, 285–86 (N.D.N.Y 2009) (citations omitted).

### B. Motion for New Trial

"A district court can grant a motion for new trial [under Federal Rule of Civil Procedure Rule 59(a)] if the first trial was unfair or if the jury verdict was against the great weight of the evidence." *Cates v. Creamer*, 431 F.3d 456, 460 (5th Cir. 2005); *see also Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 433 (1996). Rule 59 allows the Court to grant a new trial "on all or some of the issues" presented in the initial trial. But "even when only one issue is tainted by error or prejudice, a new trial must nevertheless be granted on all issues 'unless it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice.'" *Eximco, Inc. v. Trane Co.*, 748 F.2d 287, 290 (5th Cir. 1984) (quoting *Gasoline Prod. Co. v. Champlin Ref. Co.*, 283 U.S. 494, 500 (1931)).

The Fifth Circuit has identified three factors that support granting a new trial: "the simplicity of the issues, 'pernicious occurrences' at trial, and the extent to which the evidence is in dispute." *Id.* (quoting *Scott v. Monsanto Co.*, 868 F.2d 786, 789 (5th Cir. 1989)). This test is disjunctive; only one factor must weigh in favor of granting a new trial, and even if none do, a new trial may be justified when other indicia demonstrate that the jury verdict was incorrect. *Id.* at 460–61. This standard requires the jury's verdict to be "against the great—not merely the greater—weight of the evidence." *Scott*, 868 F.2d at 789 (quoting *Conway v. Chemical Leaman Tank Lines, Inc.*, 610 F.2d 360, 362–63 (5th

Cir. 1980)). "[M]ere conflicting evidence or evidence that would support a different conclusion by the jury cannot serve as the grounds for granting a new trial." *Dawson v. Wal-Mart Stores, Inc.*, 978 F.2d 205, 208 (5th Cir. 1992).

## III. ANALYSIS

### A. Motion for Remittitur

Defendant requests remittitur based on its theory that the jury's damages award is not supported by the record. According to Defendant, the jury included the optional lease extension years in their calculation as follows:

> The total amount of loan proceeds received by Defendant for rent to be paid under the lease for the three-year term was $6,430,600. (Am. Stipulated Facts, Number 26). After deducting the amount due to Defendant under the proceeds sharing contract of $4,000,000, the remaining amount is $2,430,600. Plaintiff's fifty percent share of this amount is $1,215,300. The amount of rent due under the lease for option years four and five if the government exercises the options is $2,280,000 per year, or a total of $4,560,000. D-19. Plaintiff's fifty percent share of this amount for each year if the government exercises the options would be $2,280,000. The total amount which would therefore be due to Plaintiff through option year five would have been $3,495,300.

(*Id.* at 2).

Defendant then surmises that the jury came up with its $4,095,300 damages award as follows:

| | |
|---|---|
| $6,430,600 | Loan proceeds for first three years of lease |
| -4,000,000 | Due to Defendant under the proceed sharing contract |
| 2,880,000 | Option year 4 at $240,000 per year, calculated as follows:<br>$190,000 monthly rent<br>$ 45,000 monthly utility payment, reconciled quarterly<br>$  5,000 HVAC reimbursement<br>$240,000 per month |
| 2,880,000 | Option year 5 at $240,000 per year, calculated as follows:<br>$190,000 monthly rent<br>$ 45,000 monthly utility payment, reconciled quarterly<br>$  5,000 HVAC reimbursement<br>$240,000 per month |
| $8,190,600 | Total |
| $4,095,300 | ½ of proceeds through year five |

(*Id.* at 3).

Using this math, Defendant argues the jury's award is erroneous on several bases. First, the jury erroneously assumed that the government will exercise the options for years four and five. Defendant believes the evidence did not support that the government intends to do so since no one from the government testified at trial and the evidence at trial "proved the government does not intend to exercise the options for years four and five." (Mot. Remittitur, Dkt. 114, at 5). Second, the jury erroneously included $45,000 in monthly utility reimbursements for option years four and five. According to Defendant, the "utility reimbursement is not rent payable under the Lease but is a reimbursement for utilities which is then reconciled on a quarterly basis, based on actual usage." (*Id.* at 6). Third, the jury erroneously failed to deduct Defendant's expenses under the lease through August 2021 which totaled $1,968,541.75. (*Id.* at 7). Defendant states that Plaintiff did not dispute those expenses. Fourth and finally, Defendant claims remittitur is required for the damages awarded for option years four and five to reduce them to present value. (*Id.*).

Defendant's remittitur claim fails for several reasons, all of which stem from the fact that Defendant—and the Court—do not and cannot know how the jury calculated damages. For example, this Court cannot know whether the jury considered the utility reimbursements or future damages, much less how they calculated future damages. Setting aside Defendant's conjecture, the Court focuses on the jury's award of $4,095,300. The jury's award is a dollar figure that was within the range of damages evidence presented at trial. Defendant offered a damages model that totaled $231,000. (D-74). Plaintiff's expert calculated damages to be $8,815,532 if the Government exercised the lease renewal options as well as the $12,000,000 purchase option. (*See* Reply, Dkt. 120 (conceding that Plaintiff sought damages between $8,815,532 and $25,546,185)). Plaintiff's expert also calculated damages based on an estimated value submitted to a bank and arrived at a figure of $25,546,186. (*Id.*; P-66). There also was an audio recording between Plaintiff and Daniel Stratton in which Plaintiff requested $4 million from Defendant as a buyout of its interest in the contract to which Daniel Stratton responded, "[Y]ou can take me to court and beat my ass up but I'm never paying you $4 million." (P-41). While a verdict for $25 million perhaps would not be supported by the evidence, the jury's award of just over $4 million is supported by the evidence. The jury enjoys substantial discretion in awarding damages within the range shown by the evidence. *Neiman-Marcus Group, Inc. v. Dworkin*, 919 F.2d 368, 372 (5th Cir. 1990). Here, the jury's award sits squarely within the range of damages evidence—and in fact is lower than Plaintiff's range—and was supported by the evidence presented at trial.

Even assuming the jury included future damages in its award, the jury did not err if it did so. The jury heard evidence that supported future damages, including: (1) the Government listing the "period of performance" for the lease as ending on December 31, 2024, (D-36, at 2); (2) the Government's investments in the property that exceeded $2.6 million, (P-11); and/or (3) an aerial photograph of the property that showed heavy equipment clearing the surrounding land from which

the jury may have inferred that the Government intended to make room for additional improvements, (P-3). If the jury did include future damages, it had a rational basis for adding future damages to its award.

### B. Motion for New Trial

In the alternative, Defendant requests a new trial. Defendant's first three bases merely repeat arguments this Court has already rejected: (1) the damages award is against the great weight and preponderance of the evidence and are excessive because it was not known if the government would exercise the renewal options; (2) the damages award is against the great weight and preponderance of the evidence because they are based on speculation and conjecture; and (3) the damages award wrongly included expenses incurred under the lease. (*See* Dkt. 114, at 4–10). These arguments fail for essentially the same reasons. First, Defendant makes these arguments based on its assumption of how the jury calculated damages, which cannot be assumed. Second, to the extent the jury's award included future damages, the jury heard evidence that would have supported an award that included future damages. The fact that there may also have been evidence submitted to the jury that tended to show that the government would not likely exercise the renewal options does not render the verdict invalid. "[M]ere conflicting evidence or evidence that would support a different conclusion by the jury cannot serve as the grounds for granting a new trial." *Dawson*, 978 F.2d 205, 208. Here, as discussed above in Section III.A., the evidence supported the jury's award of damages, and the jury's verdict was not against the great weight of the evidence.

Finally, Defendant contends that Question Two on the verdict form contained prejudicial error. Question Two was on damages and followed the initial breach of contract question. The breach of contract question asked: "Did Defendant Stratton Securities, Inc. fail to comply with the Proceeds Sharing Agreement dated May 2, 2019? In making this determination, consider whether Defendant Stratton Securities, Inc. waived the May 17, 2019 deadline in the Proceeds Sharing

7

Agreement dated May 2, 2019." (Dkt. 119, at 1). The jury answered yes and moved to Question Two, which asked: "What sum of money, if paid now in cash, would fairly and reasonably compensate Plaintiff El Campo Ventures, LLC for its damages that resulted from Defendant Stratton Securities, Inc.'s failure to comply with the Proceeds Sharing Agreement dated May 2, 2019?" (*Id.*).

Defendant argues Question Two violates the terms of the contract because, under the contract, the parties would only share proceeds if the Government exercised the renewal option. (Dkt. 114, at 10–11). According to Defendant, Question Two allowed the jury to award damages not supported by the contract, failed to limit damages to the first three years of the lease, and allowed the jury to award damages based on option years four and five and the purchase option. Defendant also argues that Question Two failed to inform the jury it may not speculate in awarding damages. Assuming Defendant requested a speculation instruction, which Defendant does not claim it did, such an instruction was unnecessary. The jury charge instructed the jury to judge the facts from the testimony heard and evidence submitted and decide the case "based entirely on . . . the evidence presented to you in the courtroom." (Dkt. 108, at 2). The jury could award damages only based on the evidence they heard at trial, and as discussed above, the jury heard evidence that supported an inference that the government would exercise its renewal options. Based on that evidence, the jury could have and may have awarded future damages.

## IV. CONCLUSION

For these reasons, **IT IS ORDERED** that Defendant's Motion for Remittitur, or in the Alternative, Motion for New Trial, (Dkt. 114), is **DENIED**.

**SIGNED** on August 23, 2022.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

8