IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| EL CAMPO VENTURES, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:20-CV-560-RP |
| | § | |
| STRATTON SECURITIES, INC., et al., | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court are three related motions by Plaintiff El Campo Ventures, LLC

("Plaintiff"): (1) Emergency Motion for Turnover of Sales Proceeds, (Dkt. 151), (2) Second Motion

for Attorney's Fees and Costs, (Dkt. 157), and (3) Motion to Supplement Second Motion for

Attorney's Fees and Costs, (Dkt. 169). Having reviewed the briefing, argument and testimony at a

hearing, and the relevant law, the Court will moot Plaintiff's Emergency Motion for Turnover of

Sales Proceeds and grant Plaintiff's request for attorney's fees and costs as a sanction against

Defendant Stratton Securities, Inc. ("Stratton Securities").[1]

## I. BACKGROUND

This breach of contract case is in the post-judgment phase following a jury trial at which

Plaintiff won a $4,095,300 verdict. (Dkt. 109). The parties had a dispute about an agreement to sell

or lease Stratton Securities' property in Carrizo Springs, Texas (the "Property"). The Property had

large modular buildings on it that had been used to house oilfield workers and detain immigrant

children. Following the jury trial, this Court entered judgment in favor of Plaintiff and against

Stratton Securities, (Dkt. 111), awarded attorney's fees and interest to Plaintiff, (Dkt. 138), and

issued an amended final judgment, (Dkt. 139). Stratton Securities filed an appeal. (Dkt. 140). Stratton

---

[1] Defendants Shannon and Daniel Stratton own Stratton Securities.

Securities did not post a supersedeas bond, and the Court issued the Abstract of Judgment. (Dkt. 142).

About six months after the notice of appeal, on February 28, 2023, Plaintiff filed an unopposed motion for writ of execution ("Writ Motion"). (Dkt. 147). The Court granted the Writ Motion as unopposed. (Dkt. 149). In the Order for Writ of Execution and Sale of Property (the "Writ"), this Court ordered that a levy of execution and sale of the property would be executed and effected as follows:

> a. The Clerk of the U.S. District Court for the Western District of Texas shall issue a writ of execution of which a certified copy shall be provided to the U.S. Marshals office with a copy of the form USM-285;
>
> b. El Campo shall obtain a title report that is certified within 30 days of the proposed sale and provide a list of lienholders on the property to the U.S. Marshals who shall then forward the Notice of Levy and Notice of Sale to any such lienholder identified;
>
> c. El Campo shall deposit with the U.S. Marshal an amount to satisfy an estimate for the services to be provided in conjunction with execution of the writ and for the sale of the Property;
>
> d. El Campo shall indemnify the U.S. Marshal as required by the U.S. Marshal for the sale of the Property;
>
> e. El Campo shall perform an appraisal of the Property within 30 days of seizure by the U.S. Marshals and provide a copy of the same to the U.S. Marshal;
>
> f. El Campo shall prepare a Notice of Levy and a Notice of Sale and as applicable, coordinate with the U.S. Marshals for the mailing of same;
>
> g. El Campo shall post such Notice of Levy and Notice of Sale in the designated area for public auctions of real property in Dimmit County, Texas, in accordance with Texas Law;
>
> h. The U.S. Marshals shall arrange for advertisement in a newspaper of general circulation of Dimmit County, Texas to be included in the newspaper once per week for four consecutive weeks;
>
> i. The U.S. Marshal shall sell the Property to the highest bidder at public auction accepting payment in only cash or certified funds;
>
> j. The U.S. Marshal shall keep a record of the bidders at the sale and provide a copy of such record to El Campo; and

k. The U.S. Marshals shall tender funds received at the sale payable to the Law Office of Ben Gates, P.C. IOLTA account and return the writ to this Court with the results of such execution in accordance with Federal Law.

The Writ issued on March 10, 2023. (Dkt. 150).

On February 21, 2023—a week before Plaintiff filed its Writ Motion—Stratton Securities agreed to sell the property to a third party, Target Logistics Management, LLC ("Target Logistics") for $5,000,000. (Target Logistics Mot., Dkt. 152, at 3–5). In that agreement, Stratton Securities made certain representations and warranties, including that "there [wa]s no lawsuit, claim, investigation, administrative, or legal action or proceeding pending . . . relating to the Property before any federal, state or local court . . . that challenges or impair[s] Seller's ability to execute or perform its obligation under this Agreement." (*Id.* at 3). Additionally, Stratton Securities agreed that it held a "good and indefeasible title to the Property free and clear of all liens, encumbrances or adverse claims whatsoever." (*Id.*).

When Plaintiff contacted opposing counsel about a week later to see if Stratton Securities would oppose the Writ Motion, opposing counsel said that Stratton Securities did not oppose, even though Defendants had already agreed to sell the Property to Target Logistics. (Certificate of Conference, Dkt. 147, at 4). Plaintiff was unaware that Stratton Securities had already entered into an agreement with Target Logistics to sell the property to Target Logistics. (Turnover Mot., Dkt. 151). Like Plaintiff, Target Logistics was also in the dark. Target Logistics did not know about the lawsuit, the verdict, the judgment, or the Writ. (*See, e.g.*, Target Logistics Mot., Dkt. 152, at 4) ("Despite having actual knowledge of the El Campo judgment, neither Stratton Securities nor its counsel advised Target of such judgment."). On March 31, Stratton Securities and Target Logistics closed on the purchase of the property. (*Id.* at 5). On that same day, Defendant Daniel Stratton signed a sworn affidavit under oath stating there were "no loans or liens (including Federal or State Liens and Judgment Liens)" against the property." (Stratton Aff., Dkt. 152-6, at 1).

3

Following the close of the sale, Target Logistics began making improvements on the property, still unaware of this case. On May 9, a U.S. Marshal visited the property and told the Target Logistics workers they needed to vacate and posted a copy of the Writ. (Target Logistics Mot., Dkt. 152, at 5). The visit from the U.S. Marshal's office blew Defendants' cover. The U.S. Marshal's visit and order to vacate is how Target Logistics learned of the case and Defendants' misrepresentations, and Plaintiff discovered that Defendants had deceived it and the Court.

After uncovering Defendants' scheme, Plaintiff filed its Emergency Motion for Turnover of Sales Proceeds ("Turnover Motion"). In the Turnover Motion, Plaintiff argues that Defendants "perpetrated an egregious and intentional fraud upon this Court" by knowingly violating the Writ. Right after the Turnover Motion was filed, Stratton Securities wired the judgment amount to Plaintiff's counsel on May 15. (Resp. Turnover Mot., Dkt. 154, at 2–3). Stratton Securities then filed an untimely, short response arguing that Plaintiff's motion was moot because Stratton Securities had satisfied the judgment by wiring the money. Stratton Securities also boldly contends it was not prohibited from selling the property by the Writ. (*Id.* at 3). On May 16, Stratton Securities dismissed its appeal. (Dkt. 153).

The Court set Plaintiff's motion for a hearing and instructed counsel and parties to appear. (Order, Dkt. 155). Before the hearing, Plaintiff filed its Second Motion for Attorney's Fees and Costs. (Mot. Atty's Fees, Dkt. 157). The hearing was held and, although Defendants' counsel appeared, Defendants did not. (Minute Entry, Dkt. 160). Because Defendants did not appear, the Court had to adjourn the hearing. The Court issued a show cause order requiring Defendants to show cause "why they should not be held in contempt and subject to sanctions for any misrepresentations and for acting in contravention of the [Writ]." (Order, Dkt. 161). The Order also set a second hearing date and included the instruction, again, that counsel and parties appear. (*Id.*). A second hearing was held, and Defendants appeared as ordered. (Minute Entry, Dkt. 167). At the

4

second hearing, the Court heard argument from counsel and testimony from Defendant Shannon

Stratton regarding Defendants' misrepresentations. (*Id.*). Following the hearing, Plaintiff filed its

Supplement to Second Motion for Attorney's Fees and Costs ("Supplement"). (Dkt. 169).

## II. LEGAL STANDARD

Rule 11 of the Federal Rules of Civil Procedure authorizes district courts to impose an

"appropriate sanction" for various forms of attorney misconduct "on any attorney, law firm, or

party that violated the rule or is responsible for the violation." Fed R. Civ. P. 11(c)(1). A district

court may impose sanctions against a party under its inherent authority and under Federal Rule of

Civil Procedure 11. Under its inherent authority, a court must determine whether the party that

exhibited potentially sanctionable conduct acted in bad faith. *Goldin v. Bartholow*, 166 F.3d 710, 722

(5th Cir. 1999) ("The imposition of sanctions using inherent powers must be accompanied by a

specific finding of bad faith."). Under Rule 11, a district court may award attorney's fees sua sponte

under Rule 11(c)(3) after issuing an order to show cause. *Tejero v. Portfolio Recovery Assocs., L.L.C.*, 955

F.3d 453, 458 (5th Cir. 2020) ("A court may not award attorney's fees sua sponte under Rule 11, as it

did here. There must first be a Rule 11 motion, or an order to show cause under Rule 11(c)(3).").

## III. DISCUSSION

**A.    While Plaintiff's Turnover Motion Is Moot, the Turnover Motion Outlines
Defendants' Fraudulent Actions and Builds the Record for the Imposition of
Sanctions**

The Court first takes up Plaintiff's Turnover Motion. (Dkt. 151). In that motion, Plaintiff

requests that the Court order Stratton Securities to turnover the proceeds from the sale of the

Property to Target Logistics to satisfy the judgment owed to Plaintiff based on Defendants' failure

to follow court orders and Defendants' failure to disclose to the Court and Plaintiff that the

Property was under contract for sale. (*Id.* at 1–3). Plaintiff argues Defendants acted intentionally and

knowingly, going as far as trying to delay the Writ by "repeatedly representing to El Campo that

[Stratton Securities] was in the process of obtaining a supersedeas bond" and then "abandoned its charade and informed El Campo it was no longer pursing a supersedeas bond" after the sale to Target Logistics was completed. (Emails between counsel, Dkt. 151-4, at 2–5) (showing Plaintiff's counsel repeatedly asking opposing counsel for updates regarding the supersedeas bond after Defendants' counsel represented that Defendants were "working on getting a bond"); (Dkt. 151-5, at 2–3) (showing an additional email thread between counsel with Plaintiff's counsel repeatedly asking opposing counsel for updates regarding the supersedeas bond and ending—on April 5 after the sale to Target Logistics—with Defendants' counsel admitting he didn't think Defendants would obtain one). Additionally, Daniel Stratton proposed a settlement on April 18, 2023, to resolve the appeal, saying that if Stratton Securities was not successful on appeal, Defendants "would have no choice but to avail itself of other remedies" including bankruptcy. (Emails between Dan Stratton and Plaintiff, Dkt. 151-6, at 4), even though Stratton Securities had in fact just received about $5 million in proceeds from the sale of the Property to Target Logistics on March 31. To "undo [Stratton Securities's] fraud against El Campo and Target[,]" Plaintiff requested an order requiring Stratton Securities to turnover the proceeds from the sale to Target Logistics, awarding Plaintiff reasonable costs and attorney's fees, and granting all further relief to which Plaintiff is entitled. (Turnover Mot., Dkt. 151, at 4–5).

Stratton Securities responds to Plaintiff's Turnover Motion by arguing that it is moot because Stratton Securities had wired the full judgment amount to Plaintiff. (Resp. Turnover Mot., Dkt. 154). Setting aside Defendants' calculated motivation for wiring the money only after the Court issued the Writ and after Plaintiff filed its Turnover Motion, the money wired to Plaintiff did satisfy the judgment. Accordingly, Plaintiff's request for turnover of the sale proceeds is now moot. As to Defendants' argument that the Writ did not "prohibit" them from proceeding with the sale to

Target Logistics, Stratton Securities admitted at the second hearing that they had impeded the

Court's Writ:

> THE COURT: Why do courts issue writs of execution and sale of property?
>
> MR. JONES: To set forth the procedure however that's going to happen, how that process is going to work out.
>
> THE COURT: And why do I go into detail about how it's going to be effected, who's going to get the money, where the money's going to go, why do you think I do that?
>
> MR. JONES: To make sure that that's how it's handled.
>
> THE COURT: And did your client act in a way that made it impossible to give effect to my stated order in the case?
>
> MR. JONES: Yes, sir, I guess they did.
>
> THE COURT: That's the problem.
>
> MR. JONES: Yes, sir.
>
> THE COURT: Problem is you had an order for writ of execution sale of property that was signed by me that was very specific and it said in detail about how this was supposed to happen and your clients without informing this court or without informing to the best of my knowledge the plaintiffs in this case, were engaging in completely inconsistent activity and I think the appearance is only after they got caught having done it and realizing that they were in a fix, paid the writ -- paid the judgment in the case.
>
> But it's not too late for me to go back and ask these very difficult questions about why your client was acting in a way that made it impossible for -- and these things don't happen in a vacuum. The court, the clerk, the U.S. marshal service are all engaging in activity to give effect to what I said should happen, and you didn't seem to be concerned about how much trouble and expense everybody was going to to give effect to my order and how this property was supposed to be disposed of and that's a problem.
>
> MR. JONES: I understand. Judge, I would say we haven't contested any of those costs. I mean they are something that the plaintiff can recover but I certainly understand the Court's concern.

(*See* Minute Entry, Dkt. 167).

The Writ set out a plan to sell the Property, and Defendants intentionally contravened and obstructed the Writ's purpose and plan of execution as "part of [a] sordid scheme of deliberate misuse of the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 57 (1991) (quoting the district court). When Defendants' scheme was uncovered, they attempted to buy their way out of trouble by immediately wiring the money owed to Plaintiff to moot the Turnover Motion. While the money wire did satisfy the judgment and moot Plaintiff's request for relief in the Turnover Motion, the money wire did not end the story or materially improve Defendants' standing before this Court.

**B.**      **Plaintiff's Request for Attorney's Fees Granted as a Sanction Imposed Pursuant to the Court's Inherent Authority and Rule 11**

In Plaintiff's Second Motion for Attorney's Fees and Costs, Plaintiff again describes and documents Defendants' "fraudulent scheme" carried out "in defiance of this Court's order." (Pls. 2d Mot. Atty's Fees, Dkt. 157, at 2). Plaintiff summarizes the actions taken by Stratton Securities:

> It bears mentioning that Stratton attempted to thwart El Campo's ability to secure its judgment in direct violation of this Court's order to the contrary. Stratton collected nearly $5,000,000.00 from a buyer without ever once mentioning the Abstract Judgment or the Writ of Execution to them. At every opportunity, since filing its notice of appeal, Stratton and its counsel have failed to fulfill their duty of candor to the Court, Target and El Campo. Oddly enough the only logical reason, when looking at the timeline and other evidence before this Court and part of this record, the parties are even before this Court on this attorneys' fee issue is Stratton was caught in multiple lies and attempts to fraudulently sell and transfer an asset subject to a Court order. All these machinations and conscious omissions took time and dragged out an appeal without merit, incurring substantial costs to the prevailing party, until it concluded, remarkably, because of the discovery of this deceit and fraud.

(*Id.* at 4).

Plaintiff requests the attorney's fees and costs it has expended in four contexts since post-judgment attorney's fees were awarded. First, Plaintiff requests attorney's fees spent during the pendency of Stratton Securities' appeal, citing Texas Civil Practice and Remedies Code 38.001, because the appeal was part of Defendants' scheme to delay paying the judgment while secretly entering into a sale agreement with Target Logistics. (*Id.* at 5) (citing *Ventling v. Johnson*, 466 S.W.3d

143, 154 (Tex. 2015)). Second, Plaintiff requests attorney's fees for preparing and briefing the Writ Motion, the Turnover Motion, and Second Motion for Attorney's Fees and Costs and fees and costs incurred to attend the first hearing in this Court. (*Id.* at 6). Third, Plaintiff requests an award of contingent appellate fees should Defendants appeal any portion of the Court's decision on this matter. (*Id.* at 6–7). Fourth, Plaintiff requests costs spent complying with the Writ, which the Court and Plaintiff now know were needless expenses. (*Id.* at 7). Plaintiff seeks $73,289.01 in attorney's fees, $50,000 in contingent appellate fees, and $4,465.40 in costs. (Pls. 2d Mot. Atty's Fees, Dkt. 157, at 6–7). Plaintiff also describes how Defendants' fraudulent actions and unauthorized sale of the Property significantly prejudiced Plaintiff by precluding Plaintiff from timely and rightfully collecting the amount awarded by this Court's judgment. (*Id.* at 7).

In response, Stratton Securities argue that Plaintiff's request for attorney's fees is untimely under Federal Rule of Civil Procedure 54(d)(2)(B)(i). The timeliness of Plaintiff's request for attorney's fees under Rule 54(D)(2) is not a concern. The Court will award attorney's fees pursuant to its inherent authority and Rule 11. Moreover, Defendants do not explain whether or how the deadline provided by Rule 54(d)(2) applies in the context of Rule 11 sanctions, and courts have rejected attempts to do so. *Adhikari v. Daoud & Partners*, No. 4:09-CV-1237, 2017 WL 5904782, at *4 (S.D. Tex. Nov. 30, 2017) ("Rule 54(d)(2)(B) should be considered altogether inapplicable to Rule 11."). Defendants present no other legal rebuttal to Plaintiff's request for attorney's fees and costs and do not argue that Plaintiff's factual allegations are inaccurate.[2]

In its Supplement filed after the second hearing, Plaintiff seeks a higher total award for fees and costs to account for Plaintiff's additional briefing and attendance at the second hearing. (Dkt. 169). Plaintiff seeks $84,539.01 in attorney's fees, $50,000 in contingent appellate fees, and

---

[2] While the request for relief contained in Plaintiff's Second Motion for Attorney's Fees is mooted by the updated request for relief submitted with Plaintiff's Supplement, the Court relies, in part, on the evidence and argument presented in Plaintiff's Second Motion for Attorney's Fees to inform its analysis.

$11,435.57 in costs. (*Id.* 2–4). Plaintiff also points to another false representation by Daniel Stratton. According to Plaintiff, Daniel Stratton stated in a declaration that Stratton Securities owns the modular buildings on the Property yet represented in the second hearing that Stratton Securities did not own the modular buildings on the Property. (*Id.* at 1–2). In response, Stratton Securities does not refute that allegation nor any other factual allegations made by Plaintiff. (*See* Resp. 2d Mot. Atty's Fees, Dkt. 170). Instead, Stratton Securities again argues that Plaintiff's request is untimely and claims Plaintiff's requested attorney's fees and costs are excessive or unsupported.

> ### C.    Factual Findings Regarding Defendants' Conduct

Having reviewed the evidence and heard testimony from Shannon Stratton and argument from counsel, the Court makes the following findings regarding Defendants' conduct in violation of Rule 11:

1. When Defendants were made aware that Plaintiff would seek an unopposed writ of execution and sale of the Property to satisfy the judgment, Defendants knowingly failed to disclose to the Court, Target Logistics, and Plaintiff that Stratton Securities had entered into an agreement to sell the Property to Target Logistics;

2. As shown by Shannon Stratton's testimony and email communications in evidence, Defendants received and reviewed the Writ soon after it was issued and did not stop the sale of the Property to Target Logistics, notify Plaintiff of the impending sale, notify the Court of the impending sale, or instruct their counsel to stop the sale of the Property;

3. Defendants knowingly made the Writ impossible to effect in contravention of this Court's orders, causing Plaintiff, the Court, and the U.S. Marshal to expend time and/or money effectuating the Writ even though it was impossible to effectuate because of Defendants' undisclosed actions;

4. In documents related to the sale of the Property to Target Logistics, Defendants failed to disclose the judgment in this case and the lien on the Property and misrepresented that the title was free and clear;

5. Defendants intentionally made false representations to Plaintiff that Stratton Securities was securing a supersedeas bond;

6. Defendants intentionally made false representations to Plaintiff about the financial status of Stratton Securities to secure a settlement, including raising the specter of bankruptcy right after Stratton Securities had sold the Property to Target Logistics for about $5 million;

7.  Defendants made false representations to Plaintiff and this Court about the ownership of the modular buildings on the Property.

In violation of Rule 11, the Court additionally finds that Defendants knowingly failed to comply with court orders, repeatedly acted in bad faith, and willfully misled Plaintiff, Target Logistics, and this Court.

### D.    Sanction Imposed Against Defendants

Based on the Court's findings and the record in this case and under both its inherent authority and Rule 11, the Court will grant Plaintiff's requests for attorney's fees and costs as a post-judgment sanction. A court may impose sanctions post-judgment. *Chambers*, 501 U.S. at 56 (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395–96 (1990) ("[W]e have made clear that, even under Rule 11, sanctions may be imposed years after a judgment on the merits.")); *Blanco River, L.L.C. v. Green*, 457 F. App'x 431, 438 (5th Cir. 2012) (affirming post-judgment sanctions imposed under the district court's inherent authority). The "least severe sanction adequate to serve the purpose [of Rule 11] should be imposed." *Thomas v. Capital Sec. Services, Inc.*, 836 F. 866, 877–78 (5th Cir. 1988). Plaintiff's requests for attorney's fees and costs are well-supported by attorney declarations and billing statements, (Dkts. 157-3, 157-4, 157-5), and bills and receipts associated with executing the Writ, (Dkt. 157-6). To the extent Plaintiff was unable to document any cost, the Court accepts Plaintiff's representations and has no reason to doubt their veracity. Finally, having been served a show cause order regarding potential sanctions and having had the opportunity to testify in Court, Defendants had sufficient and ample notice that this Court may impose sanctions against them.

While this Court has broad discretion to tailor the sanctions to the case,[3] the Court will follow the standard criteria for calculating and evaluating attorney's fees. The calculation of reasonable fees and expenses is done through a lodestar analysis "by multiplying the reasonable number of hours expended in defending the suit by the reasonable hourly rates for the participating lawyers." *Skidmore Energy, Inc. v. KPMG*, 455 F.3d 564, 568 (5th Cir. 2006). Once the lodestar calculation is performed, the Court may adjust that number upward or downward depending on the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). The twelve Johnson factors are: (1) the time and labor required to represent the client; (2) the novelty and difficulty of the issues in the case; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* at 117–19. Having conducted a lodestar analysis and having applied the *Johnson* factors, this Court will award Plaintiff the total amount of fees sought. Finally, having reviewed Plaintiff's documentation of expenses and in light of Defendants' bad faith conduct, the Court will award Plaintiff the total amount of costs sought.

---

[3] *See, e.g., Graham v. Dall. Indep. Sch. Dist.*, No. 3:04-CV-2461-B, 2006 WL 507944 (N.D. Tex. Jan. 10, 2006) ("In assessing the reasonableness of the fees and costs in the sanctions context . . . the Court may rely upon its own factual determination in deciding the proper fee amount.").

## IV. CONCLUSION

For these reasons, **IT IS ORDERED** that Turnover Motion, (Dkt. 151), is **MOOT**.

**IT IS FURTHER ORDERED** that the Second Motion for Attorney's Fees, (Dkt. 157), is **MOOT** given the updated request for relief contained in the Supplemental Motion for Attorney's Fees, (Dkt. 169).

**IT IS FURTHER ORDERED** that the Supplemental Motion for Attorney's Fees, (Dkt. 169), is **GRANTED**.

Accordingly, **IT IS ORDERED** that Defendants shall pay the following amounts to Plaintiff **on or before September 26, 2023**:

1. Attorney's fees in the amount of $84,539.01, and

2. Costs in the amount of $11,435.57.

Stratton Securities shall tender the above amounts payable to the Law Office of Ben Gates, P.C. IOLTA account. The Court will not extend the deadline of September 19, 2023, absent extraordinary circumstances, and the Court will not extend the deadline if Defendants file a motion for reconsideration.

**IT IS FINALLY ORDERED** that, should any of the Defendants seek any type of appellate review of this Order, Defendants shall deposit the above amounts in the Court's registry plus an additional $50,000 in contingent appellate attorney fees as security for Plaintiff.

**SIGNED** on September 19, 2023.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE